## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **PUBLIC CITIZEN,** *et al.*, | ) |
| | ) |
| **Plaintiffs,** | ) |
| | ) |
| **v.** | )    **Civil Case No.  14-148 (RJL)** |
| | ) |
| **FEDERAL ELECTION** | ) |
| **COMMISSION,** | ) |
| | ) |
| **Defendant,** | ) |
| | ) |
| **CROSSROADS GRASSROOTS** | ) |
| **POLICY STRATEGIES,** | ) |
| | ) |
| **Intervenor Defendant.** | ) |
| | ) |

## <u>MEMORANDUM OPINION</u>

March 16, 2021 [Dkts. # 23, 32, 60]

Plaintiffs Public Citizen, Protectourelections.org, Craig Holman, and Kevin Zeese ("plaintiffs") seek judicial review of the Federal Election Commission's ("FEC" or "Commission") decision *not* to further investigate whether Crossroads Grassroots Policy Strategies ("Crossroads GPS") violated the Federal Election Campaign Act of 1971 by failing to register with the FEC as a "political committee."  The case is now before the Court on the parties' motions for summary judgment.  Pls.' Mot. for Summ. J. [Dkt. #23]; Fed. Election Comm'n Mot. for Summ. J. & Opp'n ("FEC's Mot. for Summ. J.") [Dkt. # 32]; Crossroads Grassroots Policy Strategies' Mot. for Summ. J. ("Crossroads GPS's Mot. for Summ. J.") [Dkt. # 60].

1

For the reasons explained more fully below, I hold that the FEC decision is not subject to judicial review because the Commission exercised its prosecutorial discretion to dismiss this matter.  Consequently, I will **GRANT** the FEC and Crossroads GPS's motions for summary judgment and **DENY** plaintiffs' motion for summary judgment.

## BACKGROUND

### A. Statutory Scheme

The Federal Election Campaign Act of 1971's ("FECA") disclosure requirements "deter actual corruption and avoid the appearance of corruption by exposing large contributions and expenditures to the light of publicity." *Buckley v. Valeo*, 424 U.S. 1, 67 (1976).  The requirements also "provid[e] the electorate with information about the sources of election-related spending." *McCutcheon v. FEC*, 572 U.S. 185, 223 (2014) (quotations and citations omitted).

Some of the FECA's disclosure requirements apply to a "political committee," which is any "committee, club, association, or other group of persons" that receives more than $1,000 in "contributions" or makes more than $1,000 in "expenditures" in a calendar year.  52 U.S.C. § 30101(4)(A).  "Contributions" and "expenditures" are defined as payments made with a purpose to "influenc[e] any election for Federal office." *Id.* § 30101(8)(A), (9)(A).

But in order to protect issue advocacy under the First Amendment, the Supreme Court narrowed the definition of "political committee" by establishing the "major purpose" test in *Buckley v. Valeo*.  Under *Buckley*, the FECA's reporting requirements for political committees only apply to "organizations that are under the control of a candidate or the

major purpose of which is the nomination or election of a candidate." 424 U.S. at 79.  The

FEC determines on a case-by-case basis whether a group is a "political committee" under

the FECA and *Buckley* by examining the group's spending, conduct, and public and private

statements. *See* Supplemental Explanation & Justification, 72 Fed. Reg. 5595, 5601 (Feb.

7, 2007).

Not surprisingly, there are real consequences for a group that qualifies as a political

committee.  The group must register with the FEC, hire a treasurer, keep records of the

names and addresses of contributors, and file detailed monthly reporting, including, among

other information, the amount of money contributed to and received from other political

committees.  52 U.S.C. §§ 30102-03.

Any person may file an administrative complaint with the FEC alleging a violation

of the FECA.  52 U.S.C. § 30109(a)(1).  The Commission reviews that complaint and any

responses from the respondent before voting to determine whether there is "reason to

believe" that the respondent has violated the FECA.  *Id.* § 30109(a)(2).  If at least four of

the six commissioners vote in favor of a reason to believe, the Commission may investigate

the violation.  *Id.*  But without at least four votes, the Commission must dismiss the

administrative complaint.

If, however, the Commission dismisses the administrative complaint at the "reason

to believe" stage, the complainant may seek judicial review of the Commission's decision

in this District.  *Id.* § 30109(a)(8)(A).

## A. Factual and Procedural Background

Crossroads GPS was founded in June 2010 as a 501(c)(4) nonprofit corporation devoted to "further[ing] the common good … by engaging in research, education, and communication in efforts regarding policy issues of national importance."  AR 401.

Plaintiffs filed an administrative complaint in October 2010, alleging that Crossroads GPS violated the FECA by "raising and spending significant amounts of money to influence the 2010 congressional elections" without abiding by the FECA's disclosure requirements for political committees.  AR 1-22.  The administrative complaint requested that the Commission find "reason to believe" that Crossroads GPS violated the FECA, conduct an investigation, and impose sanctions for any violations.  AR 19-20.  Crossroads GPS submitted several responses to the administrative complaint, as well as evidence of its financial activities.  AR 32-90, 92-176, 228-37, 239-339.

On November 21, 2012, the FEC's Office of General Counsel ("OGC") provided the Commission with the First General Counsel's Report and Proposed Factual and Legal Analysis, wherein OGC recommended that the Commission find "reason to believe" Crossroads GPS violated the FECA "by failing to organize, register, and report as a political committee."  AR 340-93.

In December 2013, the Commission deadlocked 3-3 on whether there was reason to believe Crossroads GPS violated the FECA.  AR 395.  Because a minimum of four commissioners are needed to proceed with an investigation, the administrative complaint was dismissed.  52 U.S.C. § 30109(a)(2).  The commissioners who found that there was no

"reason to believe" ("Controlling Commissioners") Crossroads GPS violated the FECA issued a statement of reasons providing the rationale for their vote.  AR 400-504.

The Controlling Commissioners first noted that, based on its public filings, Crossroads GPS exceeded the $1,000 statutory threshold under 52 U.S.C. § 30101(4)(A) to qualify as a political committee.  AR 404-05.

The Controlling Commissioners then evaluated whether Crossroads GPS qualified as a political committee under *Buckley*'s major purpose test.  First, the Controlling Commissioners concluded that "nothing in Crossroads GPS's official documents—including its articles of incorporation, mission statement, and website—indicates that its central organizational purpose was the nomination or election of a federal candidate."  AR 412.  Second, the Controlling Commissioners determined that Crossroads GPS's express advocacy spending accounted for 36 percent of its total spending, which, the Controlling Commissioners concluded, was "well below the threshold spending necessary to meet the major purpose test."  AR 412-415.[1]

In its analysis, the Controlling Commissioners rejected two novel theories proffered by OGC.  First, the Controlling Commissioners rejected OGC's theory that the Commission should consider Crossroads GPS's "spending related to federal campaign activity," including "funds spent on communications that support or oppose a clearly identified federal candidate, but do not contain express advocacy."  *Id*.  OGC's proposal,

---

[1] The Controlling Commissioners also considered other metrics for Crossroads GPS's express advocacy expenditures and total spending.  AR 423-24.  But each of these calculations resulted in spending below 50 percent, which the Controlling Commissioners concluded was insufficient.  *Id*.

according to the Controlling Commissioners, would "undermine the function of the major purpose limitations" and "would count spending wholly outside the Commission's regulatory jurisdiction for the explicit purpose of asserting that very regulatory jurisdiction over the organization." AR 415.  Second, the Controlling Commissioners rejected OGC's proposal that the Commission should focus on the 2010 calendar year, instead of Crossroads GPS's fiscal year.  AR 419.  The Controlling Commissioners noted that Crossroads GPS was founded halfway through 2010, and "using the myopic and artificial window of a single calendar year would inevitably subject many issue-based organizations to the burdens of political committee status." *Id.*

Finally, the Controlling Commissioners stated:

> We also note that the Commission maintains broad discretion to dismiss matters as our decision not to enforce "often involve[] a complicated balancing of a number of factors which are peculiarly within [our] expertise." *Heckler v. Chaney*, 470 U.S. 821, 831 (1985). For various reasons, including OGC's introduction of new legal theories that attempt to expand the universe of an organization's communications while contracting the period of time for evaluating an organization's spending for that analysis—neither of which were properly noticed, we believe that discretion could properly be applied here.

AR 427 n.117 (alterations in original).

In January 2014—one month after the Commission dismissed the administrative complaint against Crossroads GPS—plaintiffs filed this complaint against the FEC, contending that the Commission's "failure to find 'reason to believe' that Crossroads GPS violated FECA" was "arbitrary, capricious, an abuse of discretion and otherwise contrary

to law" in violation of the Administrative Procedure Act and the FECA.  Compl. ¶ 52 (citing 2 U.S.C. § 437g(a)(8)(C); 5 U.S.C. § 706).

Crossroads GPS moved to intervene as a defendant in April 2014.  *See* Crossroads Grassroots Policy Strategies' Mot. to Intervene and Mem. in Supp. [Dkt. # 8].    While Crossroads GPS's motion was pending, plaintiffs moved for summary judgment.  Pls.' Mot. for Summ. J.  I denied Crossroads GPS's motion to intervene, *see* Memo. Order [Dkt. # 27], and Crossroads GPS sought an interlocutory appeal, *see* Notice of Interlocutory Appeal to D.C. Cir. [Dkt. # 28].  While Crossroads GPS's appeal was pending, the FEC also moved for summary judgment.  FEC's Mot. for Summ. J.  In October 2014, our Circuit stayed proceedings in this Court pending resolution of Crossroads GPS's appeal.  In June 2015, our Circuit subsequently granted Crossroads GPS's appeal, permitting them to intervene, *see Crossroads Grassroots Policy Strategies v. FEC*, 788 F.3d 312 (D.C. Cir. 2015), and shortly thereafter, not surprisingly, Crossroads GPS also moved for summary judgment as a defendant-intervenor.  Crossroads GPS's Mot. for Summ. J.

The parties completed initial briefing in April 2016.[2]  I held oral argument on the parties' motions for summary judgment in August of that same year, and the parties submitted supplemental briefing a month later.  [Dkts. # 75, 76, 77].  The parties have also submitted and responded to several notices of supplemental authority.  [Dkts. # 70, 78, 79, 80, 81, 83].  The parties' motions are now ripe for review.

---

[2] *Amicus curiae* Center for Competitive Politics submitted a brief in support of the FEC. Br. of Amicus Curiae Center for Competitive Politics in Supp. of Def. [Dkt. # 37].

## ANALYSIS

### I.       Prosecutorial Discretion[3]

The FEC argues that the Commission exercised its "broad prosecutorial discretion"
as a "discrete basis for its decision not to prosecute."  FEC's Mot. for Summ. J. at 49-50;
*see also* Tr. of Mot. Hr'g Before the Hon. Richard J. Leon, United States District Judge at
19, 29 (Aug. 2, 2016); FEC's Suppl. Mem. in Supp. of Cross-Mot. for Summ. J. at 13-14
[Dkt. # 76]; Crossroads GPS's Mot. for Summ. J. at 49 (relying on the Commission's
exercise of prosecutorial discretion to argue that the matter is moot).  And because the
Commission exercised its prosecutorial discretion, the FEC argues, the Commission's
decision is not subject to judicial review.  FEC's Mot. for Summ. J. at 49-50.  I agree.

Our Circuit has held that the FEC's dismissal of an administrative complaint in its
exercise of prosecutorial discretion is presumptively unreviewable.  *CREW v. FEC*
("*CHGO*"), 892 F.3d 434, 439-441 (D.C. Cir. 2018).  Indeed, our Circuit has pointedly
noted that "[i]t is not for the judiciary to ride roughshod over agency procedures or sit as
board superintend[ents] directing where limited agency resources will be devoted. [Courts]
are not here to run the agencies." *FEC v. Rose*, 806 F.2d 1081, 1092 (D.C. Cir. 1986).

Here, the FEC explicitly exercised its prosecutorial discretion.  AR 427 n.117.  In
support of their decision, the Controlling Commissioners cited *Chaney*, *id.*, in which "the

---

[3] Crossroads GPS also argues that plaintiffs lack standing.  Crossroads GPS's Mot. for
Summ J. at 45-47.  Although properly understood as a mootness issue, I need not address
it here because "this [C]ourt is not bound to consider jurisdictional questions in any
particular order." *Ass'n of Irritated Residents v. EPA*, 494 F.3d 1027, 1030 n.1 (D.C. Cir.
2007) (citing *Ruhrgas AG v. Marthon Oil Co.*, 526 U.S. 574, 584-85 (1999)).

Supreme Court recited many of the reasons why an agency's exercise of its prosecutorial discretion cannot be subjected to judicial scrutiny,"[4] *CHGO*, 892 F.3d at 439.   The Controlling Commissioners then reasoned that, for various reasons, including OGC's application of "new legal theories" that were not properly noticed, "prosecutorial discretion could properly be applied here."[5]  AR 427 n.117.

There are, however, two limited instances where a party may rebut this presumption against reviewability.   *CREW v. FEC*, 316 F. Supp. 3d 349, 421-22 (D.D.C. 2018).  The first is "if the agency has 'consciously and expressly adopted a general policy' that is so extreme as to amount to an abdication of its statutory responsibilities." *CHGO*, 892 F.3d at 440 n.9 (quoting *Chaney*, 470 U.S. at 833 n.3).  The second is when the agency's decision

---

[4]

> [A]n agency decision not to enforce often involves a complicated balancing of a number of factors which are peculiarly within its expertise. Thus, the agency must not only assess whether a violation has occurred, but whether agency resources are best spent on this violation or another, whether the agency is likely to succeed if it acts, whether the particular enforcement action requested best fits the agency's overall policies, and, indeed, whether the agency has enough resources to undertake the action at all. An agency generally cannot act against each technical violation of the statute it is charged with enforcing.
>
> The agency is far better equipped than the courts to deal with the many variables involved in the proper ordering of its priorities.

*Chaney*, 470 U.S. at 831-32.

[5] Plaintiffs place too much emphasis on the Controlling Commissioner's use of the word "could." Pls.' Reply & Opp'n at 28. As evidenced by the Controlling Commissioner's use of "properly" following "could," the Controlling Commissioners were articulating that prosecutorial discretion was *permitted* in this case. The Controlling Commissioners were *not* merely stating, as plaintiffs prefer, that prosecutorial discretion could *hypothetically* be used in this case.

not to undertake an enforcement action is based *entirely* on its interpretation of the statute. *Id.* at 441 n.11 (citing *Akins*, 524 U.S. at 26).  Neither, however, has occurred here!

First, there is no evidence in the record that the FEC has "consciously and expressly adopted a general policy" amounting to an abdication of its duty to enforce the FECA. *See CHGO*, 892 F.3d at 440 n.9 (citation omitted).  And plaintiffs do not contend otherwise.

Second, the Controlling Commissioners' decision not to prosecute did *not* rely on an interpretation of the statute.  To be sure, the Controlling Commissioners' analysis of the merits of OGC's legal theories relied, at least in part, on Controlling Commissioners' interpretation of *Buckley* and its progeny, an area in which the courts do not afford deference. *Univ. of Great Falls v. NLRB*, 278 F.3d 1335, 1341 (D.C. Cir. 2002) ("We are not obligated to defer to an agency's interpretation of Supreme Court precedent under *Chevron* or any other principle.") (quoting *Akins v. FEC*, 101 F.2d 731, 740 (D.C. Cir. 1996) (en banc), *vacated on other grounds*, 524 U.S. 11 (1998)).

But regardless of the *merits* of OGC's legal theories, the Controlling Commissioners' decision not to proceed relied upon prudential concerns well within its expertise.  Indeed, proceeding would have required the FEC to rely on novel theories and Crossroads GPS did not have proper notice of these theories.  AR 422, 427 n.117.  The Controlling Commissioners reasoned that "the Commission has made no public statement, either before or after Crossroads GPS acted, that would put Crossroads GPS on notice that it would be judged based solely upon its activities for the calendar year 2010."  AR 422. Therefore, prosecuting Crossroads GPS on OGC's novel theory would have violated the FEC's policy to give the public "notice of the status of the law regarding ... the major

purpose doctrine." AR 422 n. 98 (citing 2007 Political Committee E&J at 5606). Further,

the Controlling Commissioners were concerned about the likelihood of success of

prosecuting Crossroads GPS, stating that "due process concerns would preclude the

Commission from seeking to enact a new legal norm now, without prior notice, behind

closed doors in a confidential enforcement action and apply it retroactively." AR 422

(citing *FCC v. Fox Television Station*, 132 S. Ct. 2307, 2315-2316 (2012)).

The Controlling Commissioners' concern with whether prosecuting Crossroads

GPS was consistent with the Commission's "overall policies" and whether the FEC would

be "likely to succeed" falls squarely within the FEC's expertise. *Chaney*, 470 U.S. at 831.

Further, as the Court noted in *Chaney*, "[a]n agency generally cannot act against each

technical violation of the statute it is charged with enforcing." *Id*. at 832.

Plaintiffs' arguments that the statement of reasons remains subject to judicial review

are unavailing. In particular, plaintiffs' argument that the "FEC does not possess the almost

unreviewable enforcement discretion posited in *Heckler* because Congress has chosen to

subject the Commission's enforcement decisions to judicial review," *see* Pl.'s Reply &

Opp'n at 29, was unequivocally rejected by our Circuit Court in *CHGO*, stating: "Nothing

in the substantive statute overcomes the presumption against judicial review," *CHGO*, 892

F.3d at 439.

Plaintiffs' additional argument that the FEC's decision is reviewable because the

Controlling Commissioners provided legal analysis on the merits of the administrative

complaint in addition to exercising their prosecutorial discretion is equally unavailing.

Pls.' Reply & Opp'n at 28. Our Circuit Court has explicitly rejected "the notion of carving

reviewable legal rulings out from the middle of non-reviewable actions." *CHGO*, 892 F.3d at 442 (citing *Crawley Caribbean Transport, Inc. v. Peña*, 37 F.3d 671, 676 (D.C. Cir. 1994)); *see id.* at 441-42 ("[E]ven if some statutory interpretation could be teased out of the Commissioner's statement of reasons, the dissent would still be mistaken in subjecting the dismissal of [plaintiff's] complaint to judicial review.").

As such, having exercised their prosecutorial discretion to dismiss this matter, the Controlling Commissioners' analysis is not subject to judicial review. Consequently, the FEC and Crossroads GPS's motions for summary judgment are **GRANTED** and the plaintiffs' motion for summary judgment is **DENIED**. An order consistent with this decision accompanies this Memorandum Opinion.

RICHARD J. LEON
United States District Judge